PALMER v. PATTERSON et al.

(Circuit Court, E. D. Pennsylvania. October 21, 1895.)

PATENTS—CONSTRUCTION OF CLAIMS—HAMMOCKS.

The Palmer patent, No. 271,510, for a "hammock or bed bottom," construed liberally, as covering a very useful and novel invention, and being of a primary character; and claim 1 thereof *held* infringed, claim 2 *held* not infringed.

This was a bill by Isaac E. Palmer against James B. and George F. Patterson for alleged infringement of a patent relating to hammocks.

Cowen, Dickerson & Brown, for complainant.

Wm. W. Porter, Frederick J. Geiger, and Ernest Howard Hunter, for respondents.

DALLAS, Circuit Judge. It has been conceded that, as to George F. Patterson, the bill in this case should be dismissed. This will accordingly be done; and what follows is to be understood as relating only to the remaining defendant, James B. Patterson.

This suit is founded upon an alleged infringement of the first two claims of letters patent No. 271,510, issued to Isaac E. Palmer, January 30, 1883, for "hammock or bed bottom." The question of infringement is the only substantial one, and its right solution depends upon the construction which should be given to the claims sued on, respectively. The invention, though not a great one, is of considerable merit, and may, I think, be properly classed as a primary one. Hammocks were, of course, old; but Palmer, as the proofs show, was the first to discover or devise any means by which they could be efficiently and satisfactorily suspended, when made of light, woven fabric, as, for ordinary outdoor use, it is desirable they should be. In doing this, he departed radically from anything that had been done before, and supplied, not only a very useful, but an also entirely novel, contribution to the art. He is entitled to as liberal an interpretation of his patent as adherence to the natural meaning of its terms will admit of. The first claim is as follows:

"(1) A hammock or bed bottom of woven fabric, having suspension loops at its ends, formed of unwoven portions of the threads of the warp of the fabric, substantially as herein described."

This language plainly manifests that what was intended to be claimed was, broadly, any hammock of the material designated, having the suspension loops described. The only express limitations are that the fabric used shall be a woven one, that there shall be suspension loops, and that these shall be formed of unwoven portions of the warp. This seems to me to be not merely a fair and reasonable understanding of the terms of this claim, but, indeed, the only possible one. Nor do I find anything in the specification, or in the prior art, to require its restriction within narrower bounds than its terms prescribe. In that part of the specification which relates to the subject-matter of this particular claim, precisely the same language is used as in the claim itself; and the drawings which are re-

ferred to as "embodying" the invention, and which do illustrate its principle quite clearly, cannot, in my opinion, be justly regarded as circumscribing its scope. Nothing was previously known which, upon the construction now given to this claim, the patentee can be said to have appropriated. The earlier patents set up are without pertinency. The slightest examination of them makes this so apparent as to render any discussion of them unnecessary. Neither is it requisite to descant upon the "Mexican hammock," or the fringed towels, which have been adduced. Palmer's invention is essentially different from anything which is shown by the former; and the fringe of a towel furnishes no rational analogy, either in character or function, to the suspension loops of this patent.

Infringement of the first claim has been established. The defendant makes his loops in a manner different from that which is indicated in the patent in suit; but the claim in question is not for a method of forming suspension loops, but for the loops themselves, by whatever method constructed, provided they be formed of unwoven portions of the threads of the warp of a woven fabric intended and used for a hammock. Therefore, as the defendant, admittedly, constructs his hammocks of woven fabric, and employs unwoven portions of its warp for their suspension, the real and only question is as to whether he forms suspension loops, and it appears to me to be obvious that he does. He does not make them of precisely the same form as that in which, in practice, they are made by the plaintiff. He reduces the length of the several loops, but by doing this their function is not affected, or their object varied. The plaintiff's loops are united at both ends of each loop to the body of the texture, while the defendant's are formed by returning the threads for a short distance upon their outgoing portion, and there fastening the two limbs together. In my opinion, this difference, whether so intended or not, is merely evasive, and not substantial.

The second claim is as follows:

"(2) A hammock or bed bottom having its end composed of doubled portions of a woven fabric, and having said doubled portions united by a series of suspension loops formed of unwoven portions of the same warps, which enter into the weaving of the doubled fabric, substantially as herein described."

This claim is not infringed. The defendant's construction does not have doubled portions of a woven fabric, or anything else, "united" by its suspension loops. Let a decree be prepared in accordance with this opinion.